IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Denis A. Spradlin, )<br>        )<br>        Plaintiff, )<br>        )<br>    vs. )<br>        )<br>Michael J. Astrue, )<br>Commissioner of Social Security, )<br>        )<br>        Defendant. )<br>        ) | Civil Action No. 6:06-0915-CMC-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

        This case is before the court for a report and recommendation pursuant to

Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this

District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

        The plaintiff brought this action pursuant to Section 205(g) of the Social

Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of

the Commissioner of Social Security denying his claim for disability insurance benefits

under Title II of the Social Security Act.


**ADMINISTRATIVE PROCEEDINGS**

        The plaintiff filed an application for disability insurance benefits on July 22,

1999, alleging that he became unable to work on May 7, 1998.  The application was denied

initially and on reconsideration by the Social Security Administration. On February 25, 2000,

the plaintiff requested a hearing.  The administrative law judge, before whom the plaintiff,

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent
to disposition by the magistrate judge.

his attorney and a vocational expert appeared, considered the case *de novo*, and on May 12, 2001, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended, through December 31, 1998, when his insured status expired. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on January 10, 2002. The plaintiff then filed an action for judicial review (C.A. 4:02-0277-HFF-TER). On February 18, 2005, the court remanded the case to the Commissioner under sentence four of 42 U.S.C. §405(g) for further proceedings.

A supplemental hearing was held before the ALJ on November 9, 2005. On December 20, 2005, the ALJ again denied the plaintiff's claim, finding he was not under a disability prior to the expiration of his insured status on December 31, 1998. When the Appeals Council declined to assume jurisdiction of the case on April 13, 2006, the ALJ's decision became the final decision of the Commissioner.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

(1)    The claimant met the nondisability requirements for a period of disability and Disability Insurance Benefits, as set forth in Section 216(1) of the Social Security Act, and was insured for benefits through December 31, 1998.

(2)    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

(3)    The claimant's low back pain is a "severe" impairment, based upon the requirements in the Regulations (20 CFR § 404.1520(c)).

(4)    This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

(5)    The undersigned finds that the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

2

(6)    Prior to December 31, 1998, the claimant could lift up to 10 pounds and sit for about 6 hours with a sit/stand option. He could not climb ladders, scaffolds, or ropes; he could kneel less than 5% of the day, and he could not stoop (bend), crouch, or crawl.

(7)    The claimant was unable to perform any of his past relevant work (20 CFR § 404.1565).

(8)    The claimant is a "younger individual" (20 CFR § 404.1563).

(9)    The claimant is "illiterate" (20 CFR § 404.1564).

(10)    Transferability of skills is not an issue in this case (20 CFR § 404.1568).

(11)    The claimant has the residual functional capacity to perform a range of sedentary work (20 CFR § 404.1567).

(12)    Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 202.23 as a framework for decision-making, there were a significant number of jobs in the national economy that he could perform, prior to December 31, 1998. Examples of such jobs include the sedentary, unskilled jobs of inspector, SVP 2, 726.684-050 (1600 in SC and 255,000 in US), machine tender, 574.685-010 (600 in SC and 127,000 in US), and sorter, 521.687-086 (2000 in SC and 69,000 in US).

(13)    The claimant was not under a "disability," as defined in the Social Security Act, at any time through December 31, 1998 (20 CFR § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

**APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and

3

who are under a "disability."   42 U.S.C. §423(a).   "Disability" is defined in 42 U.S.C.

§423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for at least 12 consecutive
> months.

To facilitate a uniform and efficient processing of disability claims, the Social

Security Act has by regulation reduced the statutory definition of "disability" to a series of

five sequential questions.  An examiner must consider whether the claimant (1) is engaged

in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which

equals an illness contained in the Social Security Administration's Official Listings of

Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which

prevents past relevant work, and (5) has an impairment which prevents him from doing

substantial gainful employment.  20 C.F.R. §404.1520.  If an individual is found not disabled

at any step, further inquiry is unnecessary.  20 C.F.R. §404.1503(a).  *Hall v. Harris*, 658

F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past

relevant work as it is customarily performed in the economy or as the claimant actually

performed the work.  SSR 82–62.  The plaintiff bears the burden of establishing his inability

to work within the meaning of the Act.  42 U.S.C. §423(d)(5).  He must make a prima facie

showing of disability by showing he is unable to return to his past relevant work.  *Grant v.*

*Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant

work, the burden is on the Commissioner to come forward with evidence that the plaintiff

can perform alternative work and that such work exists in the regional economy.  The

Commissioner may carry the burden of demonstrating the existence of jobs available in the

national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was 35 years old when he alleges he became disabled and 43 years old on the date of the Commissioner's final decision (Tr. 68). He has a high school education, but the ALJ found he was illiterate (Tr. 94, 372). He has prior work experience as a carpenter (Tr. 29, 89).

The record reveals that on November 20, 1997, the plaintiff sought treatment at Carolina Spine Institute for pain in the lower back and right leg following a motorcycle accident. The plaintiff reported difficulty working as a carpenter "even with accommodations for heavy lifting." Dr. George F. Warren administered a lumbar epidural steroid injection, which produced "a good response." Dr. Warren administered another epidural lumbar block to the plaintiff on July 29, 1998 (Tr. 131-40, 267-68).

On August 13, 1998, Dr. Leonard E. Forrest examined the plaintiff. The plaintiff reported that he had done well after seeing Dr. Warren in December 1997, until May 7, 1998, when he felt a "pop" in his lower back while lifting an object at work. He explained that he had not worked since June 2, 1998, and had been released to light duty work, but that no light duty work was available. Dr. Forrest's examination revealed tenderness and tightness in the right lower lumbar area, normal flexibility and no definite weakness in the lower extremities. The plaintiff's x-rays revealed compressions of the L2 vertebra and L1-2 disc space, which Dr. Forrest believed were unrelated to his current symptoms. Dr. Forrest ordered an MRI scan of the lumbar spine, which showed multilevel disc bulges, a shallow disc herniation at T12-L1 with possible nerve-root compromise and a disc herniation at L3-4 with nerve-root compromise. Dr. Forrest recommended an epidural steroid injection and physical therapy (Tr. 263-66).

Dr. Forrest administered epidural steroid injections to the plaintiff on August 17 and August 31, 1998. After the plaintiff reported only temporary relief from the injections, Dr. Forrest recommended a surgical evaluation (Tr. 141-60, 261-62).

On September 10, 1998, Dr. Steven C. Poletti evaluated the plaintiff. Dr. Poletti found "no neurologic deficit to suggest that surgical intervention would be beneficial" (Tr. 260).

On September 23, 1998, Dr. Forrest found the plaintiff had "excellent" flexibility and no weakness in the extremities (Tr. 259). On October 23, 1998, Dr. Forrest

6

referred the plaintiff to Dr. Mark Netherton, a chronic pain management specialist, after a TENS unit had failed to ameliorate the plaintiff's symptoms (Tr. 258).

On November 4, 1998, the plaintiff told Dr. Forrest that Lortab relieved his pain but made him nauseous.  Dr. Forrest prescribed medication for nausea (Tr. 257).

On November 9, 1998, Dr. Netherton examined the plaintiff, who complained of pain in the lower back and right leg, aggravated by activities and prolonged sitting, and denied loss of sensation or motor function. Examination revealed positive straight leg raises and normal gait, sensation, reflexes, and motor strength (Tr. 255-56).  Dr. Netherton performed a RACZ catheter procedure with epidural adhesionolysis on the plaintiff on December 30, 1998 (Tr. 161-62).

On February 3, 1999, the plaintiff complained of severe pain to Dr. Netherton. He related an inability "to functionally walk or carry the tools he need[ed] during his construction job for more than [two] hours and he typically work[ed] 8-10 hours per day." Dr. Netherton found the plaintiff had positive straight leg raises, tenderness in the lower back, and normal reflexes, sensation and strength (Tr. 172).

On March 10, 1999, the plaintiff complained to Dr. Netherton of pain in his low back and legs despite "several modalities of pain control."  He said he "currently [was] having difficulty with working" and that it was "getting to the point where it [was] almost impossible for him to work a full day."  He denied any loss of sensation or strength in his lower extremities. Examination revealed positive straight leg raises, tenderness in the lower back, and normal reflexes, strength, and sensation. Dr. Netherton recommended placement of an epidural infusion catheter for 36-48 hours, which was performed on March 17-18, 1999 (Tr. 176, 186-216).

On April 5, 1999, the plaintiff saw Dr. Netherton and reported only temporary relief of his symptoms after an epidural infusion catheter and complained of an inability to work or perform usual daily activities.  Dr. Netherton recommended another MRI scan (Tr.

7

254).   An MRI of the plaintiff's lumbar spine performed on April 30, 1999, showed no

significant changes from his August 1998 MRI (Tr. 217-18; see Tr. 219-220).

On May 5, 1999, the plaintiff told Dr. Poletti he was "unable to do almost

anything" due to pain in his lower back, buttocks and legs.  Dr. Poletti again found that the

plaintiff was not a candidate for surgery and referred him for a functional capacity evaluation

("FCE") (Tr. 253).

On May 13, 1999, Mike Kelly, P.T., performed a Functional Capacity

Evaluation on the plaintiff.   The plaintiff's FCE results indicated he was able to perform

fulltime work at the light-medium physical demand level (Tr. 221-40).

On June 7, 1999, the plaintiff told Dr. Netherton that his pain was "present

mostly when he [was] active" and that he had significant pain when lifting anything.  Dr.

Netherton found the plaintiff had positive straight leg raises and tenderness in the lower

back.  He referred the plaintiff to Dr. Forrest for evaluation (Tr. 250).

On June 23, 1999, Dr. Forrest found that the plaintiff had reached maximum

medical improvement and had a 15% permanent impairment rating.  He noted that the

plaintiff had multi-level lumbar disc bulges and would need "intermittent treatment in the

future."  Dr. Forrest described the plaintiff's limitations, as follows:

> I would limit his lifting maximum to thirty (30) pounds if done just
> several times per day; maximum lifting on an occasional basis
> should be fifteen (15) pounds; and I would have no more than
> five pounds lifting frequently. Bending and twisting activities at
> the waist should be avoided entirely. Also, I would have him
> avoid any kneeling and crawling; squatting can be done
> occasionally. He would need to be allowed to sit from standing
> and stand from sitting on an as needed basis. I suspect that this
> might be as frequently as every twenty (20) to thirty (30)
> minutes. Overall, his ability to stand in a workday would be
> limited to about two (2) to three (3) hours total. Taking all this
> into consideration, Mr. Spradlin's work capabilities are at a
> sedentary level at most. (I am not a vocational specialist, but I
> do know that Mr. Spradlin is not able to read and write, and
> realistically, there is not likely to be a job at a sedentary level for

an individual who is not able to read and write. He may well be functionally totally disabled.)

(Tr. 249).

On July 1, 1999, Dr. Netherton noted that the plaintiff was "basically unchanged from his last examination" (Tr. 248).

On August 19, 1999, Jean R. Hutchinson, a vocational consultant, performed an Employability Evaluation of the plaintiff. Based on the plaintiff's description of his symptoms, limitations, work history, his "suspected illiteracy" and Dr. Forrest's June 23, 1999, report, Ms. Hutchinson concluded that the plaintiff was "unemployable." She stated the plaintiff needed to learn to read, to undergo occupational retraining and to obtain a job that would accommodate his physical limitations before reentering the workforce (Tr. 241-46).

On August 23, 1999, Dr. Netherton sent the plaintiff to physical therapy at the plaintiff's request (Tr. 247).

On September 10, 1999, Dr. James K. Aymond performed an independent medical evaluation of the plaintiff upon referral from the Workers' Compensation insurance carrier. Dr. Aymond diagnosed the plaintiff with "[m]ulti-level disc bulging with degenerative disc disease" and "[s]ubjective symptoms of right L5 and possibly S1 radiculopathy, not confirmed by electrical diagnostic studies," and assigned a 15% impairment rating. He concluded that the plaintiff could lift up to 30 pounds occasionally and 15 pounds frequently, and he needed to avoid repetitive bending and twisting. He noted that the plaintiff was on "chronic narcotics" and would need ongoing pain management treatment. Dr. Aymond stated that the plaintiff should seek employment within the aforementioned lifting restrictions but found it "highly likely" that he was "significantly more functionally disabled than his impairment rating depicts, given his inability to read and write" (Tr. 269-71).

9

At the November 30, 2000, hearing, the plaintiff testified he had not worked since 1998 (Tr. 29).  He testified that he was unable to read and write and had never had a job that required him to read or write (Tr. 27-28).  The plaintiff testified that he experienced constant, severe lower-back and right-leg pain and muscle spasms in his lower back if he stayed in one position too long (Tr. 31).  He testified that he could sit for 20 minutes and stand for 20-30 minutes, and that he could alternate between sitting and standing for up to four hours (Tr. 32).  He stated that his right leg would sometimes "give out" after being on his feet more than one or two hours (Tr. 33).  The plaintiff also testified that he spent 75% of his time lying down during the day and that after being up for an hour or two he had to lie down for as long as an hour and a half (Tr. 33).

At the supplemental hearing on November 9, 2005, the plaintiff testified that he was currently working approximately three hours per day, six days per month, and that he earned approximately $150 per week (Tr. 388-90).

The ALJ asked Feryal Jubran, M.A., a vocational expert, to consider a person of the plaintiff's age, education and work experience who was illiterate and had the residual functional capacity to perform sedentary work that afforded an option to sit or stand at will, with the following additional restrictions:  no exposure to a hazardous conditions, such as unprotected heights or moving machinery; and no stooping, bending, kneeling, crouching or crawling for more than 5% of the day (Tr. 393).  Ms. Jubran testified that such a person could work as an inspector, machine tender or sorter (Tr. 393-94).

## **ANALYSIS**

As set forth above, the plaintiff originally applied for benefits in 1999, alleging disability since May 7, 1998.  After the ALJ denied the claim and the Appeals Council denied his request for review, the plaintiff filed a complaint in the district court (C.A. No. 4:02-277-HFF).  On February 18, 2005, the Honorable Henry F. Floyd, United States District Judge,

10

remanded the case to the Commissioner "for vocational expert testimony based on the medical reports and functional limitation reports of Dr. Forrest, for proper consideration to be given to the medical reports of Dr. Forrest, and for proper consideration and explanation of findings as to the plaintiff's subjective complaints of pain considered with the medical evidence in accordance with Ruling 96-7p and *Craig* [*v. Chater*, 76 F.3d 585 (4th Cir. 1996)]." Upon remand, the ALJ found that the plaintiff suffers from the severe impairment of back pain but found that he had the residual functional capacity ("RFC") to perform a limited range of sedentary work (Tr. 372). This action followed. The plaintiff argues that the ALJ erred by (1) failing to conduct a proper RFC assessment; (2) failing to comply with Social Security Ruling ("SSR") 00-4p; (3) failing to comply with Judge Floyd's remand order by failing to properly evaluate the plaintiff's pain; and (4) failing to properly evaluate the opinion of the plaintiff's treating orthopedist, Dr. Forrest.

## *RFC Assessment*

The plaintiff first argues that the ALJ failed to assess his RFC in a complete manner because he omitted three significant aspects of functional evaluation: his ability to stand and walk, the duration of his sit-stand limitation, and the functional effects of his illiteracy. This court agrees.

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.* . . .

11

> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, *7 (emphasis added).

Social Security Ruling 96-8p further states that the "RFC assessment must address both the remaining exertional and nonexertional capacities of the individual." *Id.* at *5. Social Security Ruling 96-9p, which is applicable to claimants like the plaintiff with the RFC to perform less than a full range of sedentary work, states that the "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185, *7 . The plaintiff's treating physician stated as follows, "He would need to be allowed to sit from standing and stand from sitting on an as needed basis. I suspect that this might be as frequently as every twenty (20) to thirty (30) minutes. Overall, his ability to stand in a workday would be limited to about two (2) to three (3) hours total" (Tr. 249). The ALJ was not specific in his RFC assessment as to the frequency of the plaintiff's need to alternate standing and sitting.

It is uncontested that the plaintiff is illiterate (Tr. 372), and two doctors and a vocational counselor testified that the plaintiff's illiteracy combined with his other impairments would limit the plaintiff's RFC (Tr. 246, 249, 271). As argued by the plaintiff, whether his illiteracy is considered a vocational issue or a mental issue, the fact remains that the ALJ failed to make specific findings on the implications of the plaintiff's illiteracy on his ability to work.

### SSR 00-4p

In a related issue, Social Security Ruling 00-4p provides in pertinent part:

> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE

12

> . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, *3.

The vocational expert in this case testified that a person of the plaintiff's age, education and work experience who was illiterate and had the residual functional capacity to perform sedentary work that afforded an option to sit or stand at will, with the additional restrictions of (1) no exposure to a hazardous conditions, such as unprotected heights or moving machinery, and (2) no stooping, bending, kneeling, crouching or crawling for more than 5% of the day, could work as an inspector, machine tender or sorter (Tr. 393-94). The Dictionary of Occupational Titles' ("DOT") lists those occupations as having a language requirement of 1 ("L1"), which is defined as "Read at rate of 95-120 words per minute" (pl. brief 10).

As the occupations cited by the vocational expert required a reading capacity beyond what the plaintiff was found to have, the vocational expert should have explained the inconsistency between her testimony and the DOT, and the ALJ had a responsibility to inquire into the issue. Instead, at the end of the vocational expert's testimony, the ALJ asked the expert: "And I assume your testimony is based on the DOT and to the extent that it's not consistent therewith, it's based on your experience as a vocational expert, is that correct?" The vocational expert responded, "That is correct" (Tr. 395). The defendant argues that the ALJ's question, while leading, "did not foreclose elaboration by the vocational expert" (def. brief 13), but does not address the apparently erroneous factual

13

testimony of the expert.  Clearly the finding that the plaintiff has the ability to perform these occupations is not supported by substantial evidence.

*Pain*

The plaintiff next argues that the ALJ failed to comply with Judge Floyd's order remanding the case for "proper consideration and explanation of findings as to the plaintiff's subjective complaints of pain considered with the medical evidence in accordance with Ruling 96-7p and *Craig* [*v. Chater*, 76 F.3d 585 (4th Cir. 1996)]."

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig*, 76 F.3d at 593, 595.  A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence.  20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4).  Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility."  *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).  Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record."  Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."  SSR 96-7p, 1996 WL 374186, *4.

14

In addition to the objective medical evidence, the factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

> (1)  the individual's daily activities;
>
> (2)  the location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> (3)  factors that precipitate and aggravate the symptoms;
>
> (4)  the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> (5)  treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6)  any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7)  any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

> The ALJ found as follows:
>
> The testimony of the claimant is not fully credible concerning the severity of his symptoms and the extent of his limitations. Neither the severity nor the extent is supported by the medical evidence of record.  The claimant has failed to meet his burden of proving incapacity to perform any and all work throughout the period under consideration.

(Tr. 369).  In support of this finding, the ALJ cited the fact that the plaintiff testified he had been working odd jobs.  The ALJ noted that while the work might not be considered substantial gainful activity, it suggested that the plaintiff's back pain was not as severe as he alleged.  The ALJ further stated that the plaintiff's physical examinations failed to show significant clinical findings (Tr. 369).

As argued by the plaintiff, the ALJ failed to properly evaluate the plaintiff's pain. He completely skipped the first step of the pain evaluation. Clearly the plaintiff has a medical impairment that could reasonably be expected to produce the pain alleged. Further, the plaintiff testified that he takes five Oxycodone pills per day for pain, and he has had seven epidural steroid injections (Tr. 381). Dr. Forrest noted that the plaintiff has too much pain if he does not take Lortab, but the Lortab makes him nauseous (Tr. 257). Dr. Netherton noted that the plaintiff had pain of an eight or nine, on a scale of ten, on a regular basis (Tr. 172). A vocational expert noted that if the plaintiff was on narcotic medication that prevents him from concentrating for "at least 2 hours at time," then he would be unable to perform any work (Tr. 398). The ALJ failed to discuss the narcotic medication or its side effects.

The ALJ's conclusion that the physical examinations failed to show significant clinical findings is not based upon substantial evidence. On August 17, 1998, Dr. Forrest found that the MRI showed multilevel disc bulges, a shallow disc herniation at T12-L1 with possible nerve-root compromise, and a disc herniation at L3-4 with nerve-root compromise. Dr. Forrest recommended an epidural steroid injection and physical therapy (Tr. 263). Dr. Steven Poletti, an orthopedist, found on September 10, 1998, that the MRI showed a moderate sized disc herniation at T12-L1 and multiple levels of disc bulging at all of the plaintiff's other disc levels (Tr. 260). On October 23, 1998, Dr. Forrest found that the plaintiff had chronic pain and referred him to the practice's Chronic Pain Management Specialist (Tr. 258). On November 4, 1998, Dr. Forrest indicated that the plaintiff's pain medication was causing him to be nauseous but if he did not take the medicine he was in too much pain (Tr. 257). On November 9, 1998, the pain specialist found that the plaintiff had a positive straight leg test as well as positive objective findings with lifting of the left hand. He concluded that the plaintiff had "a herniated disc in the lumbar spine are" and that he "had several injections that have not helped control his pain" (Tr. 256).

16

In view of the above errors and this court's recommendation that the decision of the ALJ be reversed and benefits awarded on this basis, it is unnecessary for the court to reach the remaining errors alleged by the plaintiff.

## **CONCLUSION AND RECOMMENDATION**

The record does not contain substantial evidence supporting the Commissioner's decision denying the plaintiff disability benefits.    The plaintiff here has not had a resolution to his claim for nearly eight years.  Reopening the record for more evidence would serve no purpose.  *See Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974). Therefore, based upon the foregoing, it is recommended that the Commissioner's decision denying the plaintiff's application be reversed pursuant to sentence four of 42 U.S.C. §405(g) and that the plaintiff be awarded benefits.

<br>

s/William M. Catoe
United States Magistrate Judge

February 26, 2007

Greenville, South Carolina